WESTERN DISTRICT OF TN
FILED IN OPEN COURT:
DATE: 6-23-21
TIME: 10:15 AM
INITIALS: TMB

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Cr. No. <u>1:19-cr-10042-STA</u> |
| THOMAS KELLY BALLARD, III, | * | |
| Defendant. | * | |

## PLEA AGREEMENT

The Defendant, THOMAS KELLY BALLARD, III ("Defendant," or "Ballard"), by and through his counsel, Leslie Ballin, knowingly and voluntarily agrees with the United States, through Allan Medina, Chief, Health Care Fraud Unit, Fraud Section, Criminal Divison, U.S. Department of Justice, and through Jason Knutson, Drew Pennebaker, and Emily Petro, the undersigned Trial Attorneys, to the following:

1. The Defendant agrees to plead guilty to Count 18 of the Indictment because he is in fact guilty of the offense.

2. Count 18 of the Indictment charges that on or about May 28, 2015, in the Eastern Division of the Western District of Tennessee, the Defendant, aiding and abetting and aided and abetted by others, did intentionally and knowingly distribute and dispense to A.L., not for a legitimate medical purpose and outside the scope of professional practice, hydrocodone, a Schedule II controlled substance. Count 18 of the Indictment also charges that death and serious bodily injury resulted from the use of the hydrocodone that the Defendant distributed or dispensed, in violation of 21 U.S.C. §841(a)(1), §841(C) and 18 U.S.C. §2.

3. The penalty for Count 18 is a term of imprisonment of at least 20 years of imprisonment, and not more than life imprisonment; a fine of not more than $1,000,000, or both, and a term of supervised release of at least 3 years. There is also a special assessment of $100.00.

4. Defendant admits that if put to its burden at trial, the government would be able to prove the following beyond a reasonable doubt:

   a. From in or around 2009 to in or around 2018, Defendant Ballard owned and operated Ballard Clinic-Family Medicine ("Ballard Clinic"), located in the Eastern Division of the Western District of Tennessee. From in or around June 2014 to on or about May 28, 2015, Defendant Ballard unlawfully distributed and dispensed the Schedule II controlled substance hydrocodone to one of his patients, Ashley Laird, including on the day before Laird died from an overdose of the hydrocodone that Defendant Ballard had prescribed her. During the course of his treatment of Laird, which began before 2008, Defendant Ballard, a medical doctor, repeatedly prescribed hydrocodone to Laird outside the scope of professional practice and not for a legitimate medical purpose, even though Defendant Ballard's own medical records reflect what Defendant Ballard considered to be Laird's psychiatric issues, prescription overutilization, manipulation, and fabrication of personal trauma. In addition, Defendant Ballard's medical records reflect that he knew that Laird had been incarcerated, had received prescriptions for Suboxone (a drug used to treat opioid dependency disorder), and had received abnormal drug testing results, including because of what Defendant Ballard believed was tampering in 2015 before her death. In spite of that history, on May 28, 2015, in the Eastern Division of the Western District of Tennessee, Defendant Ballard did intentionally and knowingly distribute and dispense, not for a legitimate medical purpose and outside the scope of professional practice, hydrocodone, a Schedule II controlled substance, to Laird, and her death resulted from the use of that hydrocodone.

5. The agreed upon value of the property subject to forfeiture for Defendant's commission of the offenses to which he has agreed to plead guilty is $10,500. Defendant will not contest, challenge, or appeal in any way the administrative or judicial (civil or criminal) forfeiture to the United States of the agreed upon value of property subject to forfeiture. The Defendant consents to entry of any orders or declarations of forfeiture regarding such property and agrees to waive the time limitation for the administrative forfeiture of the agreed upon funds. The Defendant further agrees to hold the government, its officers, agents, and employees harmless from any claim whatsoever in connection with the seizure, forfeiture, storage, or disposal of such property.

6. The United States agrees not to allocute for a fine greater than $10,000. This fine amount is separate from, and does not include, the agreed upon forfeiture amount.

7. The government agrees to recommend to the Court that the Defendant be allowed to remain out on bond pending sentencing, and that he be allowed to self-surrender to the Bureau of Prisons within a reasonably prompt time after being sentenced; *provided, however*, that the government agrees, in its sole discretion, that the conditions of release that the Court proposes to impose on the Defendant during this period are sufficient to ensure Defendant's appearance for sentencing and, afterward, self surrender to the Bureau of Prisons.

8. The government will dismiss the remaining counts of the indictment at sentencing.

9. The Defendant enters this agreement and is pleading guilty freely, knowingly, and voluntarily, and upon the advice of counsel.

10. There is no agreement as to the Defendant's criminal history.

### FRCP 11(c)(1)(C) AGREEMENT

11. The parties agree to recommend that the Defendant be sentenced to 240 months imprisonment. The Defendant understands that this recommendation, if accepted, is binding on the Court pursuant to FRCP 11(c)(1)(c). It is the intention of the parties that the Court may accept or reject this agreement **either** immediately **or** after having had an opportunity to review the presentence report, but may not modify the agreement. If the Court rejects the agreement either party may withdraw from the agreement.

### BREACH OF PLEA AGREEMENT BY THE DEFENDANT

12. Should it be judged by the Government that the Defendant has committed or attempted to commit any additional crimes or has engaged in any conduct constituting, obstructing or impeding justice within the meaning of United States Sentencing Guidelines Section 3C1.1, from the date of the Defendant's signing of this plea agreement to the date of the Defendant's sentencing, or if the Defendant attempts to withdraw his plea, the Government will be released from its obligations and would become free to argue for any sentence within statutory limits. Such a breach by the Defendant would not release the Defendant from this plea of guilty.

### WAIVER OF APPEAL AND 2255 ACTIONS

13. The Defendant is aware that 18 U.S.C. Section 3742 affords him the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the Defendant hereby waives all rights conferred by 18 U.S.C. Section 3742 to appeal any sentence imposed or to appeal the manner in

3

which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court establishes at sentencing. The Defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in 18 U.S.C. Section 3742(b). However, if the United States appeals the Defendant's sentence pursuant to 18 U.S.C. Section 3742(b), the Defendant shall be released from the above waiver of appellate rights. By signing this agreement, the Defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney. The Defendant further agrees, together with the United States, to request that the district court enter a specific finding that the Defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

14. The Defendant understands that Title 28, United States Code, Section 2255 provides an additional method by which to challenge the sentence imposed by the Court. Acknowledging this, the Defendant knowingly and voluntarily waives his right. The waiver in this paragraph does not apply to claims relating to prosecutorial misconduct or ineffective assistance of counsel.

[continued on next page]

## PLEA AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT

15. By signing this agreement, the Defendant affirms that he is satisfied with his lawyer's counsel and representation, and hereby freely and voluntarily enters into this plea agreement. The Defendant understands that this writing constitutes the entire plea agreement between the parties with respect to the plea of guilty. No other additional promises, representations, or inducements, other than those referenced in this plea agreement, have been made to the Defendant or to the Defendant's attorney with regard to this plea, and none will be made or entered into unless in writing and signed by all parties.

16. Any statement made in the course of the plea colloquy may be used against him in any criminal prosecution. The Defendant knowingly, intelligently and voluntarily waives any objection based on Federal Rules of Evidence 410.

_____     6/23/2021
THOMAS KELLY BALLARD, III            Date
Defendant

_____     6-23-21
LESLIE BALLIN                        Date
Defendant's Counsel


ALLAN MEDINA
Chief, Health Care Fraud Unit
Fraud Section, Criminal Divison
U.S. Department of Justice

By:

_____     6/23/21
JASON KNUTSON                        Date
DREW PENNEBAKER
EMILY PETRO
Trial Attorneys, Health Care Fraud Unit
Fraud Section, Criminal Divison
U.S. Department of Justice

5